IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons, | : : : : | CIVIL ACTION |
| v. | : : | |
| CEPHALON, INC., et al., Defendants, | : : : : | |
| and | : : | |
| SCIMEDICA GROUP, LLC, et al., Defendants/Third Party Plaintiffs, | : : : : | |
| v. | : : | |
| BLITZ RESEARCH, INC. Third Party Defendant | : : : | NO. 12-3753 |

## MEMORANDUM

**Padova, J.**                                                                                                                                   **October 29, 2018**

Plaintiff, Physicians Healthsource, Inc. ("PHS"), has brought this putative class action pursuant to the Telephone Consumer Protection Act of 1991 (the "TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (the "JFPA"), asserting that it was damaged by its receipt of two unsolicited advertisements sent to it by facsimile transmission ("fax") on behalf of Cephalon, Inc. in 2009. Before the Court are the Motion for Summary Judgment filed by Defendants Cephalon, Inc., Cephalon Clinical Partners, L.P., and Cephalon Development Corporation (collectively "Cephalon"), and the Motion for Summary Judgment filed by Defendants SciMedica Group, LLC and SciMedica Group Marketing Research and Consulting, LLC (collectively "SciMedica'). For the reasons that follow, we grant both Motions.

## I. BACKGROUND

This lawsuit concerns two advertisements that SciMedica faxed, on behalf of Cephalon, to an employee of PHS, Dr. Jose Martinez, in 2009. At that time, PHS employed Dr. Martinez as a primary care physician practicing in the area of pain management. (Martinez Dep. at 13, 15-16.) The first advertisement was faxed by SciMedica to Dr. Martinez on January 16, 2009 and invited Dr. Martinez to a dinner program regarding Amrix, a form of long-acting cyclobenzaprine that is prescribed for musculoskeletal pain. (Cephalon Ex. A; Martinez Dep. at 28.) On August 27, 2009, SciMedica, on behalf of Cephalon, faxed the second advertisement to Dr. Martinez, inviting him to a luncheon program in Las Vegas, Nevada that would include discussions on assessing breakthrough pain ("BTP") and the use of opioids for treating BTP. (Cephalon Ex. B.) Neither of these faxes included an opt-out notice setting forth the manner in which the recipient could ask the sender not to fax any advertisements in the future. (See Cephalon Exs. A, B.)

The Complaint asserts one claim against Defendants for violating the JFPA by sending unsolicited advertisements that fail to contain an opt-out notice, as that statute requires.[1] (Compl. ¶¶ 30-39; 47 U.S.C. § 227(b)(1)(C).) PHS seeks to recover its actual monetary losses from these violations or statutory damages of $500.00 for each violation, whichever is greater.[2]

---

[1] PHS also seeks to represent a class consisting of all persons or entities that are holders of telephone numbers to which Defendants sent advertisements by fax in the four years preceding the filing of the Complaint. (Compl. ¶ 21.) However, PHS has not yet filed a Motion for Class Certification and no class has been certified.

[2] On July 11, 2013, SciMedica filed a Third-Party Complaint against Blitz Research, Inc. ("Blitz"), alleging that SciMedica entered into numerous contracts with Blitz, pursuant to which Blitz provided recruitment and marketing services to SciMedica in connection with Amrix, including sending the January 16, 2009 fax to PHS. (Am. 3d Party Compl. ¶¶ 8-9, 13-14, 16-17.) SciMedica further alleges, in the Third Party Complaint that, to the extent that it is exposed to liability as a result of Blitz's actions, "Blitz is jointly and severally liable for damages resulting from a finding of a violation of the Junk Fax Act." (Id. ¶¶28-29.)

(See Compl. at 13.) Cephalon argues, in its Motion for Summary Judgment, that it is entitled to the entry of judgment in its favor on Plaintiff's single claim brought pursuant to the JFPA because it had express permission to fax to Plaintiff the two advertisements at issue in this case, so those advertisements were not subject to the JFPA's requirement that unsolicited advertisements contain opt-out notices. SciMedica has adopted the arguments set forth by Cephalon.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "47 U.S.C. § 227(b)(1)(C). However, where it is the moving party that has the burden of proof at trial "it must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the non-moving party." A. Natterman & Cie GmbH v. Bayer Corp., 428 F. Supp. 2d 253, 257 (E.D. Pa. 2006) (citing In re Bressman, 327 F.3d 229, 237-38 (3d Cir. 2003)); see also In re Bressman, 327 F.3d at 237 (stating that when the party that has the burden of proof with respect to a particular issue at trial moves for summary judgment as to that issue, that party has "the burden of supporting [its] motion[] with credible evidence . . . that would entitle [it] to a directed verdict if not controverted at trial." (third alteration in original) (internal quotation and citations omitted)). In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)).

### III. DISCUSSION

#### A. The JFPA

The JFPA bans the faxing of unsolicited advertisements. See 47 U.S.C. § 227(b)(1)(C). An advertisement is unsolicited if it "advertis[es] the commercial availability or quality of any property, goods, or services [and] is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The JFPA "supplies a private right of action to fax recipients for them to sue fax senders that send unsolicited fax advertisements in violation of FCC regulations." Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n, 852 F.3d 1078, 1080 (D.C. Cir. 2017), cert. denied 138 S. Ct. 1043 (2018) (citing 47 U.S.C. § 227(b)(3)). "The Act allows plaintiffs to obtain from fax senders at least $500 for each violation." Id. (citing 47 U.S.C. § 277(b)(3)).

There is one exception to the JFPA's ban on unsolicited faxes. The exception applies only if the following three elements are present: (1) the sender has "an established business relationship with the recipient;" (2) the recipient voluntarily provided the number of its telephone facsimile machine to the sender in the context of their established business relationship or voluntarily made its facsimile telephone number available for public distribution through "a directory, advertisement, or site on the internet[;]" and (3) the unsolicited advertisement contains an opt-out notice that meets certain requirements. Id. § 227(b)(1)(C)(i-iii).

Cephalon and SciMedica contend that they are entitled to summary judgment with respect to PHS's JFPA claim because PHS gave prior express permission to Cephalon to fax the January 16, 2009 and August 27, 2009 advertisements, so that those faxes were not unsolicited. PHS maintains, however, that, even if Cephalon and SciMedica can prove that the faxes were not unsolicited, the JFPA requires senders to include opt-out notices pursuant to § 227(b)(1)(C) on solicited faxes as well as unsolicited faxes. PHS relies on the Solicited Fax Rule, which was issued by the FCC in 2006 and "require[d] a sender of a fax advertisement to include an opt-out notice on the advertisement, even when the advertisement [was] sent to a recipient from whom the sender 'obtained permission.'" Bais Yaakov, 852 F.3d at 1080 (citing 71 Fed. Reg. at 25,972). Thus, the Solicited Fax Rule "mandate[d] that senders of *solicited* faxes comply with a statutory requirement that applie[d] only to senders of *unsolicited* faxes." Id.

Defendants, however, rely on Bais Yaakov, in which the United States Court of Appeals for the D.C. Circuit concluded that the FCC did not have the "authority to require opt-out notices on solicited faxes."[3] Bais Yaakov, 852 F.3d at 1083. The Bais Yaakov court held "that the

---

[3] On March 13, 2014, this proceeding was stayed pending the final resolution of administrative petitions before the FCC regarding the legality of the Solicited Fax Rule. On October 30, 2014, the FCC issued an order confirming that senders were required to include opt-out information on facsimile advertisements sent with the express permission of the recipient. 29

FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes" and vacated an order issued by the FCC that interpreted and applied the Solicited Fax Rule. Id. Thus, Defendants argue that, because the Solicited Fax Rule is unlawful, it does not apply to the faxes sent to PHS on January 16 and August 27, 2009, and they were not required to include opt-out notices in those faxes because those faxes were not unsolicited.

PHS argues that we should deny the Motions for Summary Judgment even if the faxes at issue were solicited advertisements because Bais Yaakov is not binding in this Circuit and the Solicited Fax Rule consequently applies here until the United States Court of Appeals for the Third Circuit finds that it is unlawful. Specifically, PHS argues that the jurisdictional bar contained in the Hobbs Act prevents us from following the holding of Bais Yaakov that invalidated the Solicited Fax Rule. Plaintiff relies on Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, 883 F.3d 459, 465 (4th Cir. 2018), petition for cert. docketed PDR Network, LLC v Carlton & Harris Chiropractic, Inc., No. 17-1705 (S. Ct. June 28, 2018), which states that "[t]he Hobbs Act broadly vests federal appellate courts with exclusive jurisdiction to 'enjoin, set aside, suspend (in whole or in part), or to determine the validity of' orders like the 2006 FCC [Solicited Fax] Rule." Id. at 465 (quoting 28 U.S.C. § 2342(1)). "District courts, by implication, are without jurisdiction to do any of those things." Id. Thus, PHS contends that, absent a Third

---

F.C.C.R. 13998 (Oct. 30, 2014). Cephalon, along with fourteen other parties, appealed that order in Sandusky Wellness Ctr., LLC v. FCC, No. 14-1235 (D.C. Cir.). The Judicial Panel for Multidistrict Litigation consolidated that appeal with similar appeals filed by other parties before the United States Court of Appeals for the D.C. Circuit in Bais Yaakov of Spring Valley v. FCC, No. 14-1234 (D.C. Cir.). On March 31, 2017, the D.C. Circuit issued its opinion holding that the Solicited Fax Rule was unlawful and vacated the FCC's October 30, 2014 Order. Bais Yaakov, 852 F.3d at 1083. On February 20, 2018, the United States Supreme Court denied the petition for writ of certiorari in Bais Yaakov, thus finally resolving the administrative petitions before the FCC regarding whether the FCC had statutory authority to require the sender of solicited advertisements to include opt-out notices in the faxes. See Bais Yaakov, 138 S. Ct. 1043 (2018). On March 6, 2018, we returned this proceeding to the active docket.

Circuit decision invalidating the Solicited Fax Rule, that Rule still applies in this Circuit and we must apply it.

The Unites States Court of Appeals for the Sixth Circuit rejected a similar argument in Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460 (6th Cir. 2017), cert. denied, 138 S. Ct. 1284 (2018), because the D.C. Circuit's decision in Bais Yaakov did not only decide the administrative petition filed by Bais Yaakov, but also decided administrative petitions challenging the Solicited Fax Rule that had been filed by other parties (including Cephalon), which were assigned to the D.C. Circuit by the Judicial Panel on Multidistrict Litigation. Id. at 467. The Sixth Circuit explained that "[o]nce the Multidistrict Litigation Panel assigned petitions challenging the Solicited Fax Rule to the D.C. Circuit, that court became 'the sole forum for addressing . . . the validity of the FCC's rule[ ].'" Id. (alterations in original) (quoting Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008)). "[C]onsequently, [the D.C. Circuit's] decision striking down the Solicited Fax Rule became 'binding outside of the [D.C. Circuit].'" Id. (third alteration in original) (quoting Peck, 535 F.3d at 1057). The Sixth Circuit further explained that this result is in keeping with the intent of Congress in regulating the procedure for challenging FCC rules pursuant to the Hobbs Act, stating that "by consolidating petitions into a single circuit court, the statute promotes judicial efficiency and ensures uniformity nationwide." Id. (citation omitted).

The United States Court of Appeals for the Ninth Circuit also rejected an argument similar to PHS's in True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923 (9th Cir. 2018), explaining that, when the Judicial Panel on Multidistrict Litigation "consolidates challenges to an agency regulation and transfers them to a court of appeals, the court to which they are transferred becomes 'the sole forum for addressing . . . the validity of the FCC's rules.' The decision of that court is then binding on all circuits." Id. at 929-30 (alteration in original)

(quoting MCI Telecomms. Corp. v. U.S. W. Commc'ns, 204 F.3d 1262, 1267 (9th Cir. 2000); and citing Peck, 535 F.3d at 1057). Thus, the Ninth Circuit "agree[d] with the reasoning of the Sixth Circuit and [held] that [it is] bound by Bais Yaakov." Id. at 930 (discussing Sandusky, 863 F.3d at 467-68). District Courts in the First, Seventh, and Eleventh Circuits have also considered this issue and determined that they are bound by the decision of the D.C. Circuit in Bais Yaakov. See, e.g. Raitport v. Harbour Capital Corp., 312 F. Supp. 3d 225, 233 (D.N.H. 2018) ("This court joins those that have concluded that, upon consolidation in the D.C. Circuit by the Multidistrict Litigation Panel, that court of appeals became the sole forum for challenging the FCC's Solicited Fax Rule. That court invalidated the Solicited Fax Rule, and its holding is binding upon this court." (citing Peck, 535 F.3d at 1057)); A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc., Civ. A. No. 16-2513, 2018 WL 488257, at *3 (N.D. Ill. Jan. 18, 2018); Licari Family Chiropractic, Inc. v. eClinical Works, LLC, Civ. A. No. 16-3461, 2018 WL 1449581, at *3 n.2 (M.D. Fla. Feb. 16, 2018). Indeed, another judge in this district has recently considered the issue and concluded that "[t]he D.C. Circuit's opinion in Bais Yaakov is likely binding even outside of the D.C. Circuit because that circuit had become the sole forum for addressing the FCC's rule." KHS Corp. v. Singer Fin. Corp., Civ. A. No. 16-55, 2018 WL 4030699, at *3 n.4. (E.D. Pa. Aug. 23, 2018) (citing Sandusky, 863 F.3d at 467). The KHS Court also found the reasoning of Bais Yaakov to be sufficiently persuasive that it adopted that reasoning. Id. (citation omitted).

We are persuaded by the reasoning of the Sixth Circuit in Sandusky, the Ninth Circuit in True Health Chiropractic, and by the district court opinions listed above, and we conclude that the decision of the D.C. Circuit invalidating the Solicited Fax Rule in Bais Yaakov is binding in this case. Accordingly, we conclude that the Solicited Fax Rule does not apply in this case.

B.    Burden of Proof

Since the Solicited Fax Rule does not apply in this case, Cephalon and SciMedica assert that PHS can only survive the instant Motion for Summary Judgment as to its JFPA claim if it can establish that the January 16 and August 27, 2009 faxes were sent without its consent.[4] As we discussed above, a faxed advertisement is unsolicited if it "is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

PHS maintains, however, that it does not have the burden of proving that the faxes were sent without its consent, because the existence of prior express permission is as an affirmative defense to a claim brought pursuant to § 227(b)(1)(C).[5] PHS relies on a decision of the Third Circuit that concluded that a similar exception to the application of § 227(b)(1)(A) of the TCPA is an affirmative defense. See Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355 (3d Cir. 2015). Section 227(b)(1)(A) prohibits the use of an automatic telephone dialing system or

---

[4] Cephalon and SciMedica rely on Community Vocational School of Pittsburgh, Inc. v. Mildon Bus Lines, Inc., 307 F. Supp. 3d 402 (W.D. Pa. 2018), appeal filed Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc., No. 18-1541 (3d Cir. Mar. 15, 2018). In Community Vocational School, the district court stated that: "to survive a motion for summary judgment [in a case brought pursuant to the JFPA] the plaintiff must point to specific evidence in the record sufficient to establish: '(1) the defendant utilized a telephone facsimile machine to send one or more faxes; (2) that the transmission constituted advertisements; and (3) that the defendant sent the transmissions without the recipient's consent, absent application of one of the statutory exceptions.'" Id. at 418 (quoting City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F. Supp. 3d 403, 416 (D.N.J. 2015)).

[5] PHS also argues that Defendants must prove the existence of prior express permission to send the faxes at issue by clear and convincing evidence. However, PHS has pointed to no authority in this Circuit for the application of a heightened burden of proof with respect to this issue. Instead, it relies only on Physicians HealthSource, Inc. v. A-S Medication Sols., LLC, 318 F.R.D. 712, 722 (N.D. Ill. 2016), which did not adopt this burden of proof, but quoted it in a parenthetical citation to the Solicited Fax Rule. Consequently, we decline to apply a heightened burden of proof with respect to this issue.

artificial prerecorded voice in specific circumstances unless the call is "made for emergency purposes or made with the prior express consent of the called party."[6] 47 U.S.C. §227(b)(1)(A). In Evankavitch, the Third Circuit considered which party has the burden of proof with respect to whether a telephone call that was subject to § 227(b)(1)(A)(iii) was made with the recipient's prior express consent. Id. at 366. The Third Circuit concluded that, while "the TCPA is silent about the burden of proving the[] exceptions" to the restrictions provided by 47 U.S.C. § 227(b)(1)(A), the exceptions should be treated as affirmative defenses because, "[t]o the extent a caller seeks to avail itself of an exemption to a general ban on a certain category of calls, the caller is in the best position to generate and maintain records of those communications." Id. Thus, the defendant, as the party claiming that the plaintiff provided "'prior express consent'" to receive autodialed or prerecorded calls, would have the burden of proving that prior express consent at trial. Daubert v. NRA Grp., LLC, 861 F.3d 882, 390 (3d Cir. 2017) (citing Evankavitch, 793 F.3d at 366) (additional citation omitted).

Cephalon and SciMedica argue that this reasoning does not apply to the instant lawsuit, because the discussion of "prior express consent" in Evankavitch and Daubert concerned a different subsection of § 227(b)(1) than the subsection at issue in this proceeding. Defendants rely on Sparkle Hill, Inc. v. Invecor, LLC, Civ. A. No. 13-4172, 2017 WL 4805201 (D.N.J. Oct. 25, 2017), which noted, with respect to a claim brought pursuant to § 227(b)(1)(C), that "the law is not clear whether on summary judgment it is Plaintiff's burden to show as part of its affirmative claim that the exception to liability provision does not apply, or whether it is

---

[6] Section 227(b)(1)(A) prohibits the use of an automated telephone dialing system or artificial or prerecorded voice to make calls to an emergency telephone line, to the telephone line in a patient's room in a hospital or other health care facility, or to a cellular telephone or other "service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(i)-(iii).

Defendant's burden as part of its defense to liability to show that the exception to liability provision does apply." Id. at *4 (citations omitted).

However, the United States Court of Appeals for the Ninth Circuit has specifically considered this issue and held that "'prior express invitation or permission' is an affirmative defense [to a claim brought pursuant to § 227(b)(1)(C)] on which [the defendant] bears the burden of proof." True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 931 (9th Cir. 2018). The Ninth Circuit explained that § 227(b)(1)(C) is part of the same section of the TCPA as § 227(b)(1)(A), and "it clearly provides that consent is a defense with respect to faxes, as does § 227(b)(1)(A) with respect to telephone calls." Id. Thus, the Ninth Circuit could "see no distinction" between the provision of § 227(b)(1)(A) and § 227(b)(1)(C) "that would affect which party bears the burden of proving consent." Id. We conclude that the reasoning that supported Evankavitch's allocation of the burden of proving prior express consent to the defendant in a case involving telephone calls also applies in this case involving faxes, because the sender of a fax, like a caller, is in the best position to create and maintain records regarding whether it had the recipient's prior express permission to send the fax. See Evankavich, 793 F.3d at 366. Accordingly, we further conclude that prior express permission is an affirmative defense on which Cephalon and SciMedica bear the burden of proof.

C. Prior Express Permission

Cephalon and SciMedica argue that they are entitled to summary judgment because Cephalon had prior express permission to fax to PHS the two advertisements at issue in this case and, thus, the faxes were not unsolicited and are not subject to § 227(b)(1)(C). As we discussed previously, "[a] fax is a solicited advertisement if it was sent with the recipient's 'prior express invitation or permission, in writing or otherwise.'" KHS Corp., 2018 WL 4030699, at *4 (quoting 47 U.S.C. § 227(a)(5)). "When a recipient voluntarily provides a contact number, [he]

11

provides express consent to receive material 'relate[d] to the reason why [he] provided [his] . . . number in the first place.'" Id. (final alteration in original) (quoting Fober v. Mgmt. & Tech. Consultants, LLC, 886 F.3d 789, 793 (9th Cir. 2018); and citing Daubert, 861 F.3d at 390; and Blow v. Bijora, Inc., 855 F.3d 793, 804 (7th Cir. 2017)). Accordingly, if the recipient of the fax voluntarily provided his fax number to the sender, the court must "analyze whether any fax sent to that recipient relates to the reason the contact info was provided in the first place, because if it does, then express consent was provided for the fax, and it cannot be an 'unsolicited advertisement.'" Id.

Here, Cephalon and SciMedica rely on Dr. Martinez's deposition testimony regarding his contacts with representatives of Cephalon to establish that he gave prior permission to Cephalon to send him information by fax. As we mentioned above, Dr. Martinez was employed by PHS as a primary care physician in the area of pain management. (Martinez Dep. at 13, 15-16.) Dr. Martinez testified that PHS encouraged its doctors to meet with drug company representatives to obtain information about the drug companies' products. (Id. at 59-60.) Representatives from Cephalon generally met with doctors at PHS's office once a month. (Id. at 27.) Dr. Martinez met with approximately half of the representatives that Cephalon sent to PHS and primarily discussed "muscle relaxers for musculoskeletal pain syndromes, diuretics, [and] narcotic drugs for chronic pain." (Id. at 28-29.) They discussed both Cephalon's established drugs and new product and services offered by Cephalon. (Id. at 29-30.) Dr. Martinez specifically recalls talking to representatives of Cephalon about Amrix, Fentora, Provigil, Actiq, and Gabatril. (Id. at 28-29.) Cephalon's representatives left product information with Dr. Martinez and also obtained his permission to follow up by sending him additional information. (Id. at 30.) At the same time, PHS left business cards containing its office fax number on its receptionist's desk, so that patients and drug company representatives could use that number to contact Dr. Martinez.

(Id. at 47.) Approximately once a month, Dr. Martinez received a follow-up fax from Cephalon's representatives. (Id. at 31-32.) In addition to providing Dr. Martinez with information about Cephalon's products, Cephalon's representatives also gave product samples to Dr. Martinez, including samples of Amrix. (Id. at 49-50.)

We find that Defendants have submitted undisputed evidence that establishes that Dr. Martinez gave Cephalon's representatives permission to send him additional information about the subject matters they discussed. We further find that Defendants have submitted undisputed evidence that establishes that PHS provided business cards containing its fax number to drug company representatives to enable those representatives to fax information to Dr. Martinez.

The January 16, 2009 fax that SciMedica sent to Dr. Martinez on behalf of Cephalon advertised a dinner meeting program series on Amrix. (Cephalon Ex. A.) Defendants have submitted undisputed evidence that establishes that Dr. Martinez spoke to Cephalon's representatives about Amrix and that Cephalon's representatives gave Dr. Martinez samples of that drug. We therefore find that the January 16, 2009 fax "relates to the reason" why PHS provided business cards containing its office fax number to Cephalon's representatives. KHS Corp., 2018 WL 4030699, at *4. Similarly, the fax that SciMedica sent to Dr Martinez on behalf of Cephalon on August 27, 2009 advertised a luncheon program on treating "an opioid tolerant patient with cancer and breakthrough pain . . . [including] discussions on assessing BTP, as well as the use of opioids for treating BTP." (Cephalon Ex. B.) Defendants have submitted undisputed evidence that establishes that Dr. Martinez discussed his pain management practice with representatives of Cephalon, including the use of "narcotic drugs for chronic pain." (Martinez Dep. at 28.) We therefore find that the August 29, 2009 fax "relates to the reason" that PHS provided business cards containing its office fax number to Cephalon's representatives. KHS Corp., 2018 WL 4030699, at *4. We conclude, accordingly, that Defendants have met

their burden of establishing with undisputed evidence that the faxes that SciMedica sent on behalf of Cephalon to Dr. Martinez on January 16 and August 27, 2009 were sent with the prior express permission of an employee of PHS. We further conclude, accordingly, that the faxes at issue in this litigation were not unsolicited advertisements subject to the provisions of 47 U.S.C. § 227(b)(1)(C). See KHS Corp., 2018 WL 4030699 at *4.

## IV. CONCLUSION

Because Defendants have established that the two faxed advertisements at issue in this case were sent with the prior express permission of an employee of PHS, we conclude that the faxes were not unsolicited and that the provisions of § 227(b)(1)(C) requiring the inclusion of opt-out information did not apply to those faxes. Accordingly, we conclude that Defendants are entitled to the entry of judgment in their favor as a matter of law as to PHS's claim for violation of § 227(b)(1)(C) and we grant Defendants' Motions for Summary Judgment. An appropriate Order follows.

                                          BY THE COURT:

                                          /s/ John R. Padova
                                          _____
                                          John R. Padova, J.